**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALEX FRAENKEL,

           Plaintiff,

v.

WILLIAM GARCIA, ET AL.,

           Defendants.

Civil Action No. 18-9281 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon two motions to dismiss, both seeking dismissal of *pro se* Plaintiff Alex Fraenkel's ("Plaintiff") Fourth Amended Complaint (ECF No. 24): (1) State Defendants'[1] Motion to Dismiss (ECF No. 37) and (2) Municipal Defendants'[2] Motion to Dismiss[3] (ECF No. 23). Plaintiff opposed State Defendants' Motion (ECF No. 38), and State Defendants replied (ECF No. 39). Plaintiff filed a memorandum reply and correspondence in

---

[1] The Court refers to Defendants State of New Jersey, the Attorney General of New Jersey, the New Jersey State Police, Joseph Fuentes, William Garcia, Matthew Erny, Robert Pavelchak, Mark Murranko, Robert Price, William Harkness, David Bode, and Christopher Nunziato collectively as "State Defendants."

[2] The Court refers to Defendants Christopher Bateman, Brian Glicos, and Janice Mathewson collectively as "Municipal Defendants."

[3] Municipal Defendants filed a Motion to Dismiss (Mot. to Dismiss, ECF No. 23) on October 30, 2018, responding to Plaintiff's Third Amended Complaint (Third Am. Compl., ECF No. 19). The next day, Plaintiff filed the Fourth Amended Complaint (Compl., ECF No. 24). The Court ordered that the Fourth Amended Complaint would serve as the operative complaint and granted Municipal Defendants' request to treat their previously filed motion as the responsive pleading. (Nov. 9, 2018 Order, ECF No. 34.)

response to State Defendants' reply. (ECF Nos. 40, 41.) The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, the Court grants State Defendants' and Municipal Defendants' Motions to Dismiss.

I. **FACTUAL BACKGROUND**[4]

On May 23, 2016, Plaintiff was dispatching for a taxi service when he received a call from a New Jersey State Police officer.[5] (Compl. 327, ECF No. 24.)[6] According to a police report attached to the Complaint, the trooper asked Plaintiff to come to the State Police Barracks in Somerville, New Jersey to pick up a woman whom troopers found on the side of I-287 in

---

[4] In ruling on a motion to dismiss, the Court construes all well-pled facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Where necessary to clarify statements in the Complaint, the Court considers facts from the attached exhibits. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.") As necessary, the Court notes where Defendants assert additional or contradictory facts.

[5] State Defendants describe Plaintiff as the owner of the taxi service. (State Defs.' Moving Br. 1-2, ECF No. 37-2). The Complaint does not make clear whether Plaintiff is the owner.

[6] The Complaint does not conform to the structure demanded by Federal Rule of Civil Procedure 10(b), which requires each "party to state its claims . . . in numbered paragraphs." Fed. R. Civ. PThe Rule further demands that, "if doing so would promote clarity . . . [parties must state] each claim founded on a separate transaction or occurrence . . . in a separate count . . . ." Fed. R. Civ. P. 10(b). Additionally, the Complaint contains numerous handwritten notations in contravention of Local Civil Rule 10.1(b). The formatting also makes reading and citing to the Complaint challenging. The Complaint includes a narrative section of five single-spaced pages with no paragraph breaks, section headings, line numbering, or other means of distinguishing portions of text. Finally, the Complaint and its attachments include non-consecutive handwritten page numbers, and the attached exhibits (some duplicative) are inconsistently labeled with handwritten exhibit numbers. For the parties' convenience, this opinion uses ECF PageID numbers when citing to the Complaint and its attachments.

Bridgewater Township, New Jersey (*Id.* at 354.) Troopers found the woman across the highway from a taxi that had been driven off the road. (*Id.*).

When Plaintiff arrived at the station, he recognized the woman as a driver with the taxi service. (*Id.* at 327.) The woman's live-in boyfriend was also a driver with the service, and both drivers were assigned to the taxi the troopers found off the highway. (*Id.*) Both were permitted to drive the vehicle for personal use when not assigned to a "run." (*Id.*) Neither was assigned to a "run" that day.[7] (*Id.*)

At the barracks, Trooper William Garcia ("Garcia"), Trooper Matthew Erny ("Erny"), and Detective Sergeant Robert Pavelchak ("Pavelchak") (collectively, "State Police") repeatedly asked Plaintiff to name the person who had been driving the taxi. (*Id.*) Because the taxi was not assigned to a run, Plaintiff did not know who had been driving it. (*Id.*) Plaintiff told State Police he would "find out what happened and let [the] police know . . . ." (*Id.*) State Police told Plaintiff he would be arrested if he did not immediately name the driver. (*Id.*) Again, Plaintiff said he did not know who was driving the taxi, and was arrested and charged with hindering apprehension.[8] (*Id.*)

State Police confiscated Plaintiff's two cell phones. (*Id.* at 329.) A few hours after Plaintiff's arrest, Plaintiff was brought into an interrogation room, where he noticed a video camera positioned inside near the door. (*Id.*) State Police placed Plaintiff's cell phones in front of Plaintiff and ordered him not to touch his phones. (*Id.*) Plaintiff complied with the order. (*Id.*) Plaintiff was later released and retrieved his cell phones. (*Id.*)

---

[7] The Complaint does not specify the time of day or duration of the events described.

[8] The Complaint and attachments contain inconsistencies regarding the actual criminal charge brought against Plaintiff. The New Jersey State municipal judge cites N.J.S.A. 2C:29-3(a)(1) in his opinion. (Compl. 368-69). But both the judge and Plaintiff refer to a "disorderly persons" charge (*Id.* at 329, 369), and State Defendants claim troopers had probable cause to arrest Plaintiff pursuant to N.J.S.A. 2C:29-3(a)(3) and (7) (State Defs.' Moving Br. 15). This opinion relies on the municipal judge's determination that Plaintiff was charged under N.J.S.A. 2C:29-3(a)(1).

3

Normally, when Plaintiff's flip phone receives a text message, the screen automatically displays a notification advising of the unread message and providing the option to either "view now" or "view later." (*Id.*) But when Plaintiff opened his phone after being released, the phone displayed no automatic notification, even though he had received numerous text messages while in custody. (*Id.*) From this, Plaintiff concluded State Police read his text messages. (*Id.*)

Representing himself *pro se* against the criminal charge, Plaintiff submitted requests in spring and early summer of 2016 seeking the video recording of his interrogation and records showing payments to installers or repairers of video equipment at the barracks. (*Id.* at 343-44.) In response, Plaintiff received correspondence from the Office of the Attorney General by Investigator Mark Murranko ("Murranko") and signed by Captain Robert Price on behalf of State Police Superintendent Colonel Joseph Fuentes ("Fuentes"). (Compl. 334.) The correspondence stated, "State Police Somerville Barracks is not equipped with surveillance video cameras. Therefore, no in station video exist[s]." (*Id.*) From Janice Mathewson ("Mathewson"), Discovery Coordinator with the Municipal Prosecutor of the Township of Bridgewater, Plaintiff received a memorandum stating, "Please be advised this Department *does not* conduct video recording at Headquarters," and a signed letter stating, "[T]he [New Jersey State Police] Somerville Barracks is not equipped with any video equipment therefore installers and repairers do not exist." (*Id.* at 335-36.)

On November 8, 2016, Plaintiff was found not guilty of hindering apprehension in Bridgewater Township Municipal Court. (*Id.* at 368-69.) In correspondence stating his opinion, Municipal Court Judge William T. Kelleher, Jr., wrote, "The Court concludes that there was probable cause to effect the arrest and to issue the charge, but that upon review of all the testimony the conduct does not violate the statute." (*Id.*)

4

In September 2016, the New Jersey State Police Office of Professional Standards received a complaint from Plaintiff in connection with these events. (*Id.* at 356.) Captain Christopher Nunziato sent Plaintiff correspondence to confirm the office was conducting a preliminary review pursuant to Plaintiff's complaint. (*Id.*) Detective Sergeant First Class David Bode ("Bode") later interviewed Plaintiff as part of this investigation. (*Id.* at 329.) In August 2017, Plaintiff was sent a letter signed by Captain William Harkness ("Harkness") stating, "The investigation regarding your allegations of False Arrest, False Imprisonment and Improper Search against Trooper William C. Garcia [("Garcia")] #7863 has been completed . . . . The investigation failed to develop sufficient evidence to substantiate the allegations." (*Id.* at 339.)

In this matter, Plaintiff filed his initial Complaint on May 15, 2018, seeking damages for violations of his federal and state constitutional rights. (Initial Compl., ECF No. 1.) On September 24, 2018, the Court construed several of Plaintiff's previous filings as a motion to amend the complaint and granted the motion. (Mem. Order, ECF No. 18.) Plaintiff filed the Third Amended Complaint on October 9, 2018. (Third Am. Compl., ECF No. 19.) On October 30, 2018, Municipal Defendants filed a Motion to Dismiss. (Municipal Defs.' Mot. to Dismiss., ECF No. 23.) Plaintiff filed the Fourth Amended Complaint on October 31, 2018. (Fourth Am. Compl., ECF No. 24.) This amended complaint was filed with neither the Court's leave nor written consent from Defendants.

The Court issued an order establishing Plaintiff's Fourth Amended Complaint as the operative Complaint. (Nov. 9, 2018 Letter Op. and Order, ECF No. 28.) On November 16, 2018, Municipal Defendants filed correspondence asking the Court to consider their previously filed Motion to Dismiss as the responsive pleading. (Municipal Defs.' Corr., ECF No. 33.) The Court granted this request in a text order. (Nov. 20, 2019 Text Order., ECF No. 34.) State Defendants

5

filed the instant Motion to Dismiss on November 26, 2018. (State Defs.' Mot. to Dismiss, ECF No. 27.) Plaintiff opposed on December 26, 2018. (Pl.'s Opp'n Br., ECF No. 38.) State Defendants filed a reply brief on January 2, 2019. (State Defs.' Reply Br., ECF No. 39.) Plaintiff filed a sur-reply and opposition correspondence on January 25 and 30, 2019, respectively. (Pl.'s Sur-reply and Opp'n Corr., ECF Nos. 40, 41.)[9]

## II. <u>LEGAL STANDARD</u>

Rule 8(a)(2)[10] requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Second, the court must "review[ ] the complaint to strike conclusory allegations." *Id.* Third, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the

---

[9] Local Civil Rule 7.1(d)(6) required Plaintiff to seek the Court's permission to file a sur-reply. The Court construes his reply brief and opposition correspondence (ECF Nos. 40, 41) as a motion to file a sur-reply and grants the motion.

[10] Hereinafter, unless otherwise noted, "Rule" refers to the Federal Rules of Civil Procedure.

plaintiff...." *Fowler*, 578 F.3d at 210 (citation omitted). Finally, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

In determining the sufficiency of a *pro se* complaint, the court must be mindful both to accept its factual allegations as true and to construe it liberally in favor of the plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

## III. THE PARTIES' POSITIONS

Plaintiff brings two counts against the State of New Jersey, two counts against New Jersey State Police, two counts against all individually named defendants in their official capacities, and two counts against all individually named defendants in their individual capacities. (Compl. 331-32.) The substance of each count is essentially identical. In each, Plaintiff seeks monetary damages under either 42 U.S.C. § 1983 ("Section 1983"), for substantive and procedural due process violations, or N.J.S.A. 10:6-2(c), for New Jersey Civil Rights Act ("NJCRA") violations:

> For the reasons set forth above, including but not limited to Defendants' failure to properly train defendants Garcia, Erny, Pavelchak, Bateman, Glicos, Mathewson, Murranko, Harkness, Bode, Nunziato, Price and Fuentes, the Plaintiff has been deprived of his civil rights such that defendants are liable. Wherefore, plaintiff demands judgment against the defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, cost of suit, interest, attorneys' fees[,] enhanced attorneys' fees and any other relief the Court deems equitable....

(*Id.*)

Although the counts do not articulate the constitutional violations underlying Plaintiff's demand for relief, the Court construes the narrative portion of the Complaint to make two such claims. First, Plaintiff asserts State Police arrested him without probable cause and searched his text messages without a warrant, violating his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article 1 § 7 of the New Jersey State Constitution. (*Id.* at 327, 329). Second, Plaintiff asserts Municipal Defendants violated his right to due process by withholding the video of his interrogation from discovery in his criminal case, and that all individually named defendants conspired to do so. (*Id.* at 328-30.)

Municipal Defendants advance two arguments in support of their motion. First, they argue that they are entitled to prosecutorial immunity because their actions toward Plaintiff were taken in the course of their efforts to prosecute him in Bridgewater Municipal Court. (Municipal Defs.' Moving Br. 2, 5, 7, ECF No. 23-2.) Second, Municipal Defendants argue that Plaintiff failed to plead sufficient facts to support his conspiracy claims. (*Id.* at 9-10.)

State Defendants advance several arguments in support of their motion. State Defendants argue the Eleventh Amendment and principles of sovereign immunity bar Plaintiff's suit against the State of New Jersey, the New Jersey State Police, and individually named State Defendants in their official capacities. (State Defs.' Moving Br. 7-8, ECF No. 37-2.) State Defendants construe from the Complaint that Plaintiff seeks relief for a *Brady* violation, based on the withholding of the interrogation video.[11] (*Id.* at 21.) State Defendants argue Plaintiff failed to plead facts that would support such a claim. (*Id.*) Additionally, State Defendants assert Plaintiff failed to plead sufficient facts to find Fuentes and Harkness were personally involved in any violation of

---

[11] "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

8

Plaintiff's rights. (*Id.* at 10-11.) To the extent Plaintiff seeks relief from State Police in their individual capacities, State Defendants argue State Police are entitled to qualified immunity. (*Id.* at 12.) Finally, State Defendants argue Plaintiff failed to plead facts sufficient to support a finding of supervisory liability. (*Id.* at 23.)

Plaintiff's briefs raise arguments that are inapposite or rely on outdated case law.[12] The Court addresses Plaintiff's substantive arguments in the analysis below.

## IV.  DISCUSSION

Threshold deficiencies in the Complaint compel dismissal of Plaintiff's claims. As the Court explains in detail below, Plaintiff failed to: (1) plead a conspiracy; (2) meet the pleading standard necessary to bring a Section 1983 claim against multiple defendants; and (3) sufficiently plead his failure to train claims. Sovereign immunity bars Plaintiff's claims against the State of New Jersey, New Jersey State Police, and individually named defendants in their official capacities from suit, and Plaintiff has not pled sufficient facts to show a *Brady* violation occurred. Regarding Plaintiff's claims pertaining to the search of his cell phone by State Police, the Complaint is closer to meeting the applicable pleading standard but still fails.

### A.  Plaintiff Failed to Plead a Conspiracy

Plaintiff accuses all individually named defendants of conspiring to deprive him of access to the video of his interrogation, but failed to plead sufficient facts to bring this claim.

---

[12] As State Defendants observe (State Defs.' Reply Br. 2, ECF No. 39), Plaintiff relies on an outdated standard of review for notice pleadings (Pl.'s Opp'n Br. 498, ECF No. 38). The "no set of facts" standard established in *Conley v. Gibson* has been overruled by the United States Supreme Court in more recent decisions. *Twombly*, 550 U.S. at 546 ("The 'no set of facts' language has been questioned, criticized, and explained away long enough by courts and commentators, and is best forgotten as an incomplete, negative gloss on an accepted pleading standard. . . ."). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009) ("*Twombly* retired the *Conley* no-set-of-facts test . . . ."). The Court, accordingly, applies the correct, modern pleading standards from *Twombly*, *Iqbal*, and their progeny.

9

> In order to state a claim of conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff "must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right."

*Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 299 (D.N.J. 2018) (quoting *Epifan v. Roman*, No. 11-2591, 2014 WL 4828606, at *5 (D.N.J. Sept. 29, 2014)). Plaintiff states, in a conclusory manner, that *all* individually named defendants worked "individually and in concert . . . to intentionally, maliciously and bordering on almost criminal behavior to deprive the Plaintiff of his civil rights specifically by conspiring to deny him access to a video tape . . . . [and] stonewalled the discovery process." (Compl. 329.) But Plaintiff pleads no facts to show State and Municipal Defendants had an agreement or understanding to deprive him of a federally protected right. *See Iqbal*, 556 U.S. at 678 (explaining that a plaintiff must plead sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### B. Group Pleading Does Not Support a Section 1983 Claim

The Complaint fails to meet the pleading standard necessary to bring a Section 1983 claim against multiple defendants. "In order to prevail on a [Section] 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005).

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on . . . *respondeat superior* . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence . . . . [and] must be made with appropriate particularity.

*Rode v. Dellaricprete*, 845 F. 2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

10

Here, Plaintiff does not demonstrate that Fuentes directly participated in, personally directed, or had actual knowledge of any alleged wrongdoing. Fuentes's name appears on the letterhead of the Attorney General's Office's response to Plaintiff's discovery request, which Price signed on Fuentes' behalf. (Compl. 334.) Without other supporting facts, the Court will not assume the Superintendent of the New Jersey State Police had direct knowledge of a routine discovery request. Also, although the Attorney General of New Jersey is listed as a Defendant, the Complaint's narrative neither describes action taken by the Attorney General, nor names the Attorney General as a defendant in any of the eight counts. Therefore, to the extent that Plaintiff seeks relief from Fuentes or the Attorney General, the Court dismisses his claims with prejudice.[13]

### C. Plaintiff's Failure to Train Claims are Insufficiently Pled

Each count seeks relief for deprivation of Plaintiff's constitutional rights resulting from "[D]efendants' failure to properly train [D]efendants Garcia, Erny, Pavelchak, Bateman, Gicos, Mathewson, Murranko, Harkness, Bode, Nunziato, Price and Fuentes." (Compl. 331-32). "A plaintiff's claim is at its most 'tenuous' when it 'turns on [an allegation of] a failure to train.'" *Day v. Jackson*, No. 10-4011, 2013 WL 394151, at *12 (D.N.J. Jan. 30, 2013) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "[T]he inadequacy of police training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added). The focus is on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390. "Neither will it suffice to

---

[13] State Defendants urge the Court to dismiss claims against Harkness for similar reasons. Unlike Fuentes, however, Harkness personally signed correspondence regarding the internal affairs investigation, which Plaintiff connects to his conspiracy claim. (Compl. 367.) While that claim fails on other grounds, the fact of Harkness's personal signature on the document suggests that, however tenuous the connection, he had more direct participation in these events than Fuentes.

11

prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" because "adequately trained officers occasionally make mistakes [and] the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* at 391.

Defendants named in the Complaint are not all police officers. Yet the fact that Defendants represent a variety of agencies and hold diverse jobs within those agencies highlights the lack of facts in the Complaint that show training failure shaped Defendants' various interactions with Plaintiff. Additionally, interpreted literally, the Complaint accuses each Defendant of failing to train himself (e.g., Nunziatio is being sued in his individual capacity for failing to train Nunziato). (Compl. 331-32.) This is an unsustainable proposition.

### D. Defendants are Entitled to Sovereign Immunity

Section 1983 creates a cause of action for certain violations of a plaintiff's constitutional rights.[14] To state a claim for relief under Section 1983, a plaintiff must first establish the violation of a right secured by the Constitution or laws of the United States, and second, demonstrate that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-51 (1999); *see also Morrow v. Balaski*, 719 F.3d

---

[14] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. 1983.

12

160, 166-67 (3d Cir. 2013). This district interprets the NJCRA in a manner analogous to Section 1983. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . .").

The Eleventh Amendment limits both the damages a plaintiff can seek under Section 1983 and the parties from whom the plaintiff can seek them. The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has interpreted the Eleventh Amendment as "provid[ing] states with immunity from suit *for monetary relief* in federal court not only from suits brought by citizens of other states, but also from suits brought by their own citizens." *Gattuso v. N.J. Dep't of Human Servs.*, 881 F. Supp. 2d 639, 645 (D.N.J. 2012) (emphasis added) (citing *Hans v. Louisiana*, 134 U.S. 1, 13-14 (1890); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67-68 (1996)). "'This immunity extends to state agencies and departments' and the officers of state agencies acting in their official capacity." *Estate of Tara O'Leary ex rel. Devlin v. Sloan*, No. 12-2625, 2015 WL 5335054, at *6 (D.N.J. Sept. 14, 2015) (quoting *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). "Eleventh Amendment immunity applies to claims made under federal law as well as state law." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104-06 (1984); *King v. Christie*, 981 F. Supp. 2d 296, 310 n.11 (D.N.J. 2013)).

There are exceptions to Eleventh Amendment immunity. First, Congress may abrogate sovereign immunity when a statute is passed "pursuant to congressional power under [Section] 5 of the Fourteenth Amendment to enforce the provisions of that amendment . . . ." *MCI*, 271 F.3d

at 503. "Second, a state may waive sovereign immunity by consenting to suit." *Id.* Finally, the *Ex Parte Young* doctrine provides that "individual state officers can be sued in their individual capacities for *prospective injunctive and declaratory relief* to end continuing or ongoing violations of federal law." *Id.* at 506 (emphasis added) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Here, Plaintiff failed to plead facts establishing that he may bring the instant suit for damages against the State or against individually named State Defendants in their official capacities. First, "[t]he Supreme Court has held that Congress did not abrogate a state's Eleventh Amendment immunity in enacting [Section] 1983." *Urella v. Pa. State Troopers Ass'n*, 628 F. Supp. 2d 600, 605 (E.D. Pa. 2008). Moreover, "[s]tates are not 'persons' within the meaning of [Section] 1983 and cannot be among those held liable for violations of the civil rights statute . . . . [T]hese suits, when brought against a state, are barred by the Eleventh Amendment." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").

Second, Plaintiff argues State Defendants implicitly waived sovereign immunity by "ignoring [his] request to sue." (Compl. 329.) But the court will give effect to a State's waiver of Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990). Here, Plaintiff failed to plead sufficient facts to find the State expressly waived sovereign immunity as to the State, New Jersey State Police agency, or individual defendants in their official capacities.

14

Finally, while the counts listed in the Complaint request only monetary damages, the narrative portion contains two requests the Court could construe as requests for injunctive relief. First, Plaintiff asks for all defendants to be "enjoined by the Court from violating the Constitutional rights and privileges of all persons in New Jersey." (Compl. 329.) Plaintiff also asks the Court to order all defendants "to submit to retraining regarding the observation of the Constitutional rights and privileges of all persons within the State of New Jersey." *Id.* The first request essentially "demands that this Court order Defendants to follow the law, which courts have historically declined to entertain." *Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014); *see also Sixth Angel Shepherd Rescue, Inc. v. West*, 477 F. App'x 903, 909 (3d Cir. 2012). The Court declines to entertain Plaintiff's request for relief. As to the second request, while a request for prospective injunctive relief may be considered under the *Ex Parte Young* doctrine, the exception applies only if Plaintiff establishes a continuing or ongoing violation. *MCI*, 271 F.3d at 506. Plaintiff has failed to plead such a violation.

For these reasons, the Court dismisses with prejudice Plaintiff's claims against the State of New Jersey, the New Jersey State Police agency, and the individually named defendants in their official capacities.

### E. Plaintiff's Alleged Brady Violation Cannot Proceed

"[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. The United States Supreme Court's decision in *Brady* established that prosecutors must disclose known material information favorable to the accused and "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also Copling v. Cathel*, No. 05-6010, 2013 WL 2338504, at *11 (D.N.J. May 28, 2013). Thus, the *Brady* rule proscribes withholding evidence "favorable

to an accused" and "material to [his] guilt or to punishment." *Cone v. Bell*, 556 U.S. 449, 451 (2009). To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of the following three showings: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the State suppressed the evidence, "either willfully or inadvertently"; and (3) "prejudice . . . ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Here, Plaintiff cannot bring a claim for a *Brady* violation because he has no conviction to contest: Plaintiff was found not guilty in the criminal proceeding for which he sought the video.[15] (Compl. 368-69). Therefore, he cannot show "prejudice . . . ensued" from the withholding of the interrogation video. *Strickler*, 527 U.S. at 282.

In Counts VII and VIII, Plaintiff seeks monetary damages against all individually named defendants in their individual capacities. (Compl. 332.) Plaintiff's constitutional claims against Municipal Defendants and Price, Murranko, Bode, Harkness, and Nunziato relate to their roles in a conspiracy to withhold the interrogation video. (*Id.* at 329.) Because Plaintiff's alleged *Brady* violation claim cannot proceed, he cannot seek monetary damages under Section 1983 against these individuals in their individual capacities. Thus, the Court dismisses with prejudice Plaintiff's

---

[15] The Court notes that Plaintiff requested from State Police and the Bridgewater Municipal Prosecutor "all videos . . . concerning the arrest of Alex Fraenkel" at the Somerville Barracks. (Compl. 344.) Murranko's letter states that the Somerville Barracks "is not equipped with surveillance video cameras," without addressing whether some other type of video camera might have been used during Fraenkel's arrest and interrogation. (Compl. 351.) Similarly, Mathewson's letter asserts the Barracks "is not equipped with any video equipment and therefore installers and repairers do not exist," without addressing whether free-standing or other non-installed equipment might have been used. (Compl. 352.) The memo from Mathewson states "this Department does not conduct video recording at Headquarters," without clarifying whether "Headquarters" refers to the Somerville Barracks, where Plaintiff was arrested, or whether video recording includes recording of interrogations. (Compl. 353.)

claims against Municipal Defendants,[16] Price, Murranko, Bode, Harkness, and Nunziato in their individual capacities.

## F. Qualified Immunity May Not Apply

"'Qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). "'Because qualified immunity bestows immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation. . . . [T]hus, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Thomas*, 258 F.3d at 281 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations and citation omitted).

"In this case, we must decide whether, 'accept[ing] the allegations of the complaint as true and draw[ing] all reasonable inferences in the light most favorable to the plaintiff[s]' . . . 'a reasonable [state trooper] could have believed [State Police's actions in conducting the search] to

---

[16] Although the Court dismisses Plaintiff's claims against Municipal Defendants on other grounds, his claims would also be barred by absolute prosecutorial immunity. "Damages actions against prosecutors . . . should not 'survive[ ] the pleadings,' because a prosecutor must be unfettered in his or her duty to enforce the criminal law." *Evans v. City of Newark*, No. 14-00120, 2016 WL 2742862, at *10 (D.N.J. May 10, 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 424-26 (1976) (alterations in original)).

be lawful, in light of clearly established law and the information the searching [agents] possessed.'" *Leveto*, 258 F.3d at 163 (citations omitted). Plaintiff claims State Police violated his constitutional rights by arresting him without probable cause and searching his cell phone without a warrant. (Compl. 327-28.) The Fourth Amendment's protection against unreasonable searches and seizures prevents police officers from arresting individuals without probable cause. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)); *see also Rodriguez v. City of Passaic*, 730 F. Supp. 1314, 1319 n.8 (D.N.J. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990) ("Art. 1, ¶ 7 of the New Jersey Constitution virtually replicates the Fourth Amendment to the United States Constitution and decision under the latter will be dispositive of the former."). Further, the Third Circuit has stated:

> Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient ... to warrant a *reasonable person* to believe that an offense has been or is being committed by the person to be arrested.

*Id.* at 482-83 (emphasis added) (citations omitted).

In this case, Plaintiff was arrested and charged with hindering apprehension. The relevant portion of the criminal statute he was charged with violating reads: "A person commits an offense if, with purpose to hinder the detention, apprehension, investigation, prosecution, conviction or punishment of another for an offense [he] . . . harbors or conceals the other." N.J.S.A. 2C:29-3(a)(1). A person may violate the statute by failing to "provide the name and pedigree" of another. *Batiz v. Brown*, 676 F. App'x 138, 141 (3d Cir. 2017) (establishing that failing to provide information to police violates the statute absent case law to the contrary). Here, Plaintiff pleads that he repeatedly refused to comply with the State Police's request for him to identify who was driving the taxi, even after State Police advised him that his continued refusal to assist their

18

investigation of the taxi crash could result in his arrest. (Compl. 327.) The Court, accordingly, agrees with the municipal court's finding that a reasonable officer would have had probable cause to arrest Plaintiff, even if the evidence did not ultimately support his conviction. (Compl. 369.)[17]

The alleged search of Plaintiff's cell phone is a separate matter. In a landmark 2014 ruling, the United States Supreme Court held "a warrant is generally required before such a search, even when a cell phone is seized incident to arrest." *Riley v. California*, 573 U.S. 373, 401 (2014). Citing *Riley*, State Defendants note State Police are "permitted to open plaintiff's flip phone and inspect it for the presence of weapons." (State Defs.' Mot. to Dismiss 17) (quoting *Riley*, 573 U.S. at 388). Per the *Riley* Court, however, "[o]nce an officer has secured a phone and eliminated any potential physical threats . . . data on the phone can endanger no one." *Riley*, 572 U.S. at 387.

The Complaint leaves key facts ambiguous. For example, it does not specify the steps normally required to clear "unread message" notifications, nor does it allege that merely opening the phone would not clear the messages. The Complaint also does not indicate whether the messages received while Plaintiff was in custody were *individually* marked read or unread. (Compl. 327-28.) Such facts would allow the Court to infer whether Plaintiff's phone was merely opened to search for weapons or whether the individual messages were read. Were these facts

---

[17] To the extent that Plaintiff alleges a violation of his right to a *Miranda* warning (Compl. 327), the facts pled do not support a claim for relief. *See Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) ("[W]hen an individual is taken into custody . . . and is subjected to questioning . . . [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him . . . ."). The facts alleged before the court do not show Plaintiff gave testimony used against him in the criminal proceedings. Moreover, Plaintiff was not convicted, rendering moot any request to suppress evidence. While a *Miranda* violation may give rise to a Section 1983 claim for infringement of substantive due process under the Fourteenth Amendment, the remedy is strictly limited to "egregious" circumstances in which "unauthorized police behavior . . . 'shock[s] the conscience.'" *See Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

clearly stated and the Complaint's other deficiencies cured, Plaintiff may be able to plead plausibly that State Police actions regarding Plaintiff's cell phone violated his constitutional rights, and that those rights were clearly established by *Riley*.

For these reasons, Plaintiff's claims against Garcia, Erny, and Pavelchak are dismissed without prejudice. The Court grants Plaintiff leave to file an amended complaint.[18]

## V.  CONCLUSION

For the reasons set forth above, Municipal Defendants' and State Defendants' Motions to Dismiss are granted. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

**Dated: June 26, 2019**

---

[18] As evidenced by the foregoing discussion, Section 1983 claims are complex. Thus, Plaintiff may consider seeking counsel to assist in this matter. In addition, Plaintiff's amended complaint must address the formatting and substantive issues identified in this Memorandum Opinion or all of Plaintiff's claims may be subject to dismissal with prejudice.